SCHOOL DISTRICT NUMBER THREE OF THE TOWNSHIP OF
RIVERSIDE v. THE TOWNSHIP OF RIVERSIDE.

*Schools and school districts—Apportionment of property and moneys
—Action of board of inspectors—Mandamus.*

1. Under the statute requiring the township board of school inspectors, when changes are made in school districts, to apportion the property and moneys of the divided district among the several districts erected, according to taxable property, their action may sometimes be confined to one district; but it is possible that occasions may arise for a more *general* recasting of districts, and, when this duty has been delayed after successive changes, that some *general* reapportionment may become desirable or necessary, and at some time or other should be made.

2. In the absence of records or facts to the contrary, the Court will assume that said board met to perform what they supposed was a legal duty, and will not criticise formal points and unimportant phrases in the action of such board, when performing duties belonging to *plain* men acting in the common interest; nor should the Court meddle with the concerns of school districts except in things of substance.

3. *Mandamus* will not be granted to disturb an apportionment made by the township board of school inspectors between different districts, acquiesced in for several years, and which if the Court could change it has no proof that it ought to.

Mandamus. Submitted October 19, 1887. Denied October 27, 1887.

Relator applies for *mandamus* to compel the payment of moneys claimed to be due it from respondent. The facts are stated in the opinion.

*Dunham & Thorp (D. E. McIntyre,* of counsel), for relator.

*Pratt, Hatch & Davis,* for respondent.

CAMPBELL, C. J.   This proceeding, which, for reasons not explained, has been delayed on the trial of the issues and return to this Court much longer than the parties should have kept it, now comes up on the judge's findings for judgment.   As now put in shape, it shows this rather peculiar state of facts:   In the period between 1871 and 1881 this district, which was then one of four in the town, had its boundaries changed more than once; but just how far these changes affected all, or only a part, of the rest, does not appear.   Since 1881 it has not been changed.

On May 23, 1881, the township board of school inspectors proceeded to what they have called a "reviewing" of the different school funds, fixing each district's credits with the treasurer, and giving relator credit for $215.   The statute does not use this phrase, but it requires, when changes are made in school districts, that as soon as may be the board shall apportion the property and moneys of the divided district among the several districts erected, according to taxable property.   This process may sometimes be confined to the condition of one district; but it is evidently possible that occasions may arise for a more general recasting of districts as population changes, or other events require.   And we conceive it is also possible, where this duty has been delayed after successive changes, that some general reapportionment may become desirable or necessary, and at some time or other should be made.

In the absence of records or facts to the contrary, we must assume that the board met to perform what they supposed to be a legal duty, and it is easy to see what they aimed at.   There is nothing before us to show any illegality in their mode of procedure, or any unfairness or clandestine conduct. And in the action of such a local board we have no right to criticise formal points and unimportant phrases, when they are performing duties belonging to plain men acting in the common interest.   Counsel refer to some lack of legal regu-

larity, but we have not before us what took place on the trial, and we should not meddle with the concerns of school districts, except on things of substance.

The court finds that each of the districts, including relator, accepted the apportionment, and thenceforward its credits were balanced, as directed, in the town treasurer's books, and all accounts started off on that basis, so that the town treasurer's books have several times been balanced accordingly with relator as well as the rest.

In September, 1883, the officers of relator undertook to draw on the town treasurer for over $400, and he refused to honor the order, as his successors have refused. The school business has been conducted on the other state of accounts. There is nothing to show that there ever was any foundation for so large a claim, on any theory, unless it included moneys later received, and, if it did, those have been accounted for otherwise. In October, 1885, a *mandamus* was asked in the present case to require payment of that order as correct. Upon the issues made up, it now appears from the findings that the judge ascertained that according to old debits and credits up to September, 1883, aside from the apportionment, a balance would still remain due relator of $156.79; but he further finds that nothing remains due and unpaid if the apportionment stands. This would indicate that by these several changes of districts relator had in some way got that much more than its share until rectified by the review.

We have no means and no right to change this finding. It was made by the proper board, and acquiesced in now over six years, and had been, when this proceeding was started, about four years and a half. If we could change it, we have no proof that we ought to. It is not likely that even the inspectors of 1887 could get fully at property values of 1881. And it is not wise to stir up old matters without merits and urgency.

The *mandamus* is denied, without costs to either party.

The other Justices concurred.